**UNITED STATES of America,**

**v.**

**Nelson J. PASCUAL, Defendant.**

**5:16-CR-119**

United States District Court,
N.D. New York.

Signed August 10, 2016

HON. RICHARD S. HARTUNIAN, United States Attorney for the Northern District of New York, OF COUNSEL: CARINA HYATT SCHOENBERGER, ESQ:, Ass't United States Attorney, 100 South Clinton Street, Syracuse, NY 13261

HON. LISA PEEBLES, Federal Public Defender for the Districts of Northern New York & Vermont, OF COUNSEL: LISA A. PEEBLES, ESQ., Attorneys for Defendant, 4 Clinton Square, 3rd Floor, Syracuse, NY 13202

## MEMORANDUM—DECISION and ORDER

DAVID N. HURD, United States District Judge

### I. INTRODUCTION

On April 6, 2016, a federal grand jury returned a four-count indictment charging defendant Nelson Pascual ("Pascual" or "defendant") with the unlawful possession of drugs and weapons that were seized during a warrantless search of his apartment in Syracuse, New York. Defendant has moved to suppress the evidence recovered during that search and to dismiss Count Four of the indictment, which charges him as a violent felon in possession of body armor. The United States of America (the "Government") opposes the motion, which has been fully briefed. Oral argument was heard on July 22, 2016 in Utica, New York.[1] Decision was reserved.

### II. BACKGROUND

On June 7, 2011, Pascual was convicted in Supreme Court, Queens County of two counts of Attempted Robbery in the Second Degree in violation of New York Penal Law § 160.10(1). Defendant was sentenced to a thirty-month term of imprisonment to be followed by a two-year term of supervised release.

On October 3, 2013, Pascual began his term of supervision with the New York State Division of Parole. This grant of parole came subject to certain conditions, all of which defendant agreed to in writing and a few of which are notable here—among other things, defendant agreed: (1) to "permit the search and inspection of [his] person, residence and property"; (2) to "notify [his] Parole Officer of any changes in [his] residence"; (3) not to "use or possess any drug paraphernalia or use or possess any controlled substance without proper medical authorization"; and (4) not to leave the five boroughs of New York City without his Parole Officer's permission.

By June 11, 2015, Pascual had racked up a number of alleged violations of these conditions, including absconding from his approved residence. Based on these allegations, the Division of Parole issued a parole warrant for defendant's arrest.[2] Four days later, with defendant's whereabouts unknown, the Division of Parole formally declared defendant "delinquent" as of March 24, 2015, the date of the earliest alleged parole violation.

On October 22, 2015, Senior Parole Officer Rigby ("SPO Rigby") learned from a confidential informant (the "CI") that Pascual was living in an upstairs apartment located at 117 Merriman Avenue in Syracuse, New York. According to the CI, defendant was involved in "illegal drug sales." Later reports completed by Parole Officers Kevin Gibbs ("PO Gibbs") and Jason Rhodes ("PO Rhodes") also state the CI claimed defendant possessed firearms at the Syracuse residence.[3]

The next day, a number of parole officers, including PO Gibbs and PO Rhodes,

---

1. At oral argument, the parties were instructed to provide supplemental briefing on the impact of the Second Circuit's recent decision in United States v. Jones, which held that "a New York robbery conviction involving forcible stealing, absent other aggravating factors, is no longer necessarily a conviction for a 'crime of violence' within the meaning of the Career Offender Guideline." 830 F.3d 142, 2016 WL 3923838, at *5 (2d Cir. July 21, 2016).

2. A parole warrant "is an administrative warrant used in retaking and detaining a parolee or conditionally released prisoner." Calhoun v. N.Y.S. Div. of Parole Officers, 999 F.2d 647, 650 (2d Cir.1993).

3. As defendant correctly notes in his moving papers, the initial contact sheet generated for the CI's report "does not contain any statements about firearms."

arrived at Pascual's Syracuse apartment and knocked on the door. When no one answered, the officers contacted the property owner, who gave law enforcement permission to enter the premises. Defendant, along with an unidentified female occupant, finally came to the front door when the officers began removing the hinges to forcibly gain entry to the apartment. Defendant was identified and arrested.

The parole officers then entered Pascual's apartment to look for other occupants, where PO Gibbs observed "a silver digital scale on the kitchen table which was covered with a white powder suspected to be a controlled substance." Given this discovery, a more thorough search of the apartment was conducted, which turned up a silver revolver with several .22 caliber bullets, a duffel bag filled with ammunition, and a plastic bag containing a white powdery substance.

At this point, the parole officers called in the Syracuse Police Department, who tested the white powdery substance and confirmed the presence of cocaine and heroin. On the basis of these discoveries, law enforcement officials finally obtained a search warrant for the apartment, which turned up additional unlawful activity.

Later that day, Pascual waived his Miranda rights and made a written statement to Syracuse Police, where he admitted that he had come to Syracuse from downstate, that he had been paying rent for the apartment where he had been found, and that he knew there was an outstanding parole warrant for his arrest.

### III. DISCUSSION

#### 1. Motion to Suppress

Pascual argues that all of the evidence recovered from his apartment must be suppressed because neither the "parole search exception" to the warrant requirement nor the "protective sweep incident to

arrest" rationale permitted the parole officers' initial warrantless search.

■ "The Fourth Amendment protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy." United States v. Barner, 666 F.3d 79, 82 (2d Cir.2012) (quoting United States v. Newton, 369 F.3d 659, 662 (2d Cir.2004)).

Reasonableness is measured "by assessing, on the one hand, the degree to which [a search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interest." United States v. White, 622 F.Supp.2d 34, 40 (S.D.N.Y.2008) (quoting Samson v. California, 547 U.S. 843, 848, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006)); see also United States v. Knights, 534 U.S. 112, 118, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("In order to determine whether a search is reasonable within the meaning of the Fourth Amendment, courts examine the 'totality of the circumstances.' ").

■ Importantly, however, "[a] parolee's reasonable expectations of privacy are less than those of ordinary citizens[.]" United States v. Massey, 461 F.3d 177, 179 (2d Cir.2006). This diminished privacy right is rooted in a recognition that "[p]arole is not freedom. A parolee is a convicted criminal who has been sentenced to a term of imprisonment and who has been allowed to serve a portion of that term outside prison walls." United States v. Polito, 583 F.2d 48, 54 (2d Cir.1978); see also United States v. Cardona, 903 F.2d 60, 63 (1st Cir.1990) ("Parole is meted out in addition to, not in lieu of, incarceration."), cert. denied, 498 U.S. 1049, 111 S.Ct. 758, 112 L.Ed.2d 778 (1991).

In New York, parole officers are charged with an ongoing duty "to investi-

gate whether a parolee is violating the conditions of his parole—one of which, of course, is that the parolee commit no further crimes—when the possibility of violation is brought to the officer's attention." White, 622 F.Supp.2d at 42 (quoting United States v. Reyes, 283 F.3d 446, 459 (2d Cir.2002). Accordingly, the New York Court of Appeals has held that a "parolee's constitutional right to be secure against unreasonable searches and seizures is not violated when his apartment is searched, without a search warrant, by his parole officer if the latter's conduct is rationally and reasonably related to the performance of his duty as a parole officer." People v. Huntley, 43 N.Y.2d 175, 179, 401 N.Y.S.2d 31, 371 N.E.2d 794 (N.Y.1977).[4]

As the Government asserts, this statement of the law should foreclose Pascual's suppression argument—defendant does not dispute that he was alleged to have violated numerous conditions of his parole, that he had absconded, that he had been declared delinquent, that the Division of Parole had issued a warrant for his arrest, or even that he had agreed to the consent search conditions found in his parole agreement that are set forth above.[5]

Pascual sidesteps these problematic facts by claiming he was not actually subject to any of the diminished protections or liberty restrictions that would ordinarily stem from either his status as a parolee generally or from the terms of his specific parole agreement. Instead, according to defendant, his two-year term of parole actually expired on October 3, 2015, nearly three weeks before the arrest and warrantless search took place on October 23.

This bold claim is based on Pascual's proffered reading of the provision of New York Penal Law identified by the Government in opposition, which states in relevant part that:

> When a person is alleged to have violated the terms of presumptive release or parole and the state board of parole has declared such person to be delinquent, the declaration of delinquency shall *interrupt* the person's sentence as of the date of delinquency and such interruption shall continue until the return of the person to an institution under the jurisdiction of the state department of corrections and community supervision.

N.Y. Penal Law § 70.40(3)(a) (emphasis added).

According to the Government, the "interruption" caused by a formal declaration of delinquency pursuant to this statute effectively tolls the maximum expiration date of a parolee's sentence, automatically extending the end date of the parole term until the parolee is taken back into custody. Therefore, because defendant's parole term was "interrupted" by the Division of

---

**4.** This is actually a more protective standard than the one suggested by the Supreme Court in Samson. See, e.g., United States v. Quinones, 457 Fed.Appx. 68, 69 n.1 (2d Cir. 2012) (summary order) (leaving open the question of whether Huntley's "more solicitous standard" remains good law in light of Samson because the search would have been justified under either formulation of the test).

**5.** In fact, there is a fair argument to be made that Pascual lacks standing to challenge the search at all, since his unapproved presence at the Syracuse apartment constituted a violation of the conditions of this parole agreement. See White, 622 F.Supp.2d 34, 43 n. 8 (noting parolee's "wrongful presence" as an overnight guest at an unapproved residence in violation of a parole condition was a sufficient alternate basis on which to deny a suppression challenge); see also United States v. Viserto, 391 Fed.Appx. 932, 933–34 (2d Cir. 2010) (summary order) (rejecting parolee's claim to legitimate expectation of privacy against a parole search where officers entered to "execute an arrest warrant for a parole fugitive"). However, given the nature of defendant's argument, this decision will proceed to the merits of his claim.

Parole's delinquency determination, his parole did not end on October 3, 2015, the original expiration date of his sentence.

According to Pascual, however, this statutory language deals only with recalculating the remainder of a delinquent parolee's sentence when he is eventually apprehended. Thus, even though he had absconded, been declared " delinquent" by the Division of Parole, and a parole warrant had been issued for his arrest, defendant argues he was not subject to any parole-based search justification when law enforcement finally caught up to him in Syracuse.

■■■ Pascual's argument is rejected. As the Appellate Division has explained, "[a] convicted person released from incarceration on parole continues to serve his or her sentence while on parole and earns credit toward the maximum expiration date of the sentence unless and until the Division of Parole declares that person to be delinquent and revokes parole[.]" Oriole v. Saunders, 66 A.D.3d 280, 884 N.Y.S.2d 719, 720 (N.Y. 1st Dep't 2009) (citations omitted). "If parole is not revoked, a parolee is deemed to be in legal custody of the Division of Parole until expiration of the maximum term or period of sentence[.]" Id. (citation and internal quotation marks omitted).

■■■ "When a parolee is declared delinquent, however, the sentence is interrupted as of the date of the delinquency, and the interruption continues until the parolee's return to an institution under the jurisdiction of the Department of Correctional Services[.]" Oriole, 884 N.Y.S.2d at 720 (citation omitted). "As a result, the term of the interrupted sentence is extended, *beyond the original maximum expiration date*, for a period of time equal to the delinquency period." Id. (emphasis added) (citations omitted); see also Campbell v. Evans, 105 A.D.3d 1277, 963 N.Y.S.2d 771, 772–73 (N.Y. 3d Dep't 2013) (rejecting pa-

rolee's challenge to his delinquency and noting in passing that his delinquent status "interrupted the running of [the parolee's] sentence and altered its maximum expiration date").

This explanation of New York's parole scheme is intuitive, since "[t]he essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abides by certain rules during the balance of the sentence." Morrissey v. Brewer, 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Indeed, the Second Circuit, at least in the context of a civil claim, has interpreted this "interruption" provision of New York's Penal Law in exactly the same way, stating that "[w]here a sentence has been interrupted by a declaration of delinquency, the term of defendant's sentence is 'adjusted', i.e. *extended*, beyond the original maximum expiration date for a period of time equal to the interruption, less one day." Calhoun v. N.Y.S. Div. of Parole Officers, 999 F.2d 647, 650 (2d Cir.1993) (emphasis added).

In essence, accepting Pascual's argument would mean that any delinquent state parolee who avoids apprehension until after his parole term's original expiration date would be freed from any parole-based search justification that might flow from either the consent search conditions found in his parole agreement or from the special-needs-based rationale set forth in Huntley—in either case, it would mean a delinquent parolee is restored to the status of an ordinary citizen as far as the Fourth Amendment is concerned.

That cannot be the law. As the Second Circuit has noted, "[i]f anything, the allegation of a parole violation and the issuance of the arrest warrant removed [the defendant] 'one step farther from the constitutional protection enjoyed by ordinary citizens.' " Barner, 666 F.3d at 85 (quoting Polito, 583 F.2d at 55); see also People v.

Diaz, 163 Misc.2d 103, 618 N.Y.S.2d 1000, 1003 (N.Y.Sup.Ct.1994) ("[D]efendant's liberty interest at the place of arrest—if indeed he had any interest—was severely limited by reason of his parole and fugitive status.").

■ Therefore, even assuming the revocation of Pascual's parole meant that he was not subject to the consent search condition found in his release agreement at the time of his arrest, the warrantless search would still be justified under Huntley, which "did not purport to confine its rule to whether the defendant was [still] on 'release,' but rather on whether the search was rationally and reasonably related to the parole officer's duties." Barner, 666 F.3d at 85–86 (holding a post-arrest search of a parolee's residence permissible and noting that "[a] parole officer's duty to investigate violations of parole does not vanish the moment a defendant is taken into custody for a violation").

As discussed above, the warrantless search of the unapproved Syracuse residence where Pascual was staying occurred at the time of his arrest on a valid parole warrant, which was issued based on allegations that defendant had violated the terms of his release. Because defendant was already a known absconder in violation of his parole, the search conducted at the time of his arrest was therefore made in furtherance of, and rationally and reasonably related to, the parole officer's continuing duty to investigate the nature and extent of the parole violations defendant might have committed in addition to those already apparent from the circumstances of his recapture. See, e.g., Barner, 666 F.3d at 85 (approving warrantless search of arrested parolee's apartment); United States v. Pabon, 603 F.Supp.2d 406, 416 (N.D.N.Y.2009) (upholding propriety of

search of "a known absconder in direct violation of parole"); White, 622 F.Supp.2d at 44 (rejecting suppression argument where warrantless search of parolee's apartment was conducted following his arrest on parole warrant).

In the alternative, Pascual has requested an evidentiary hearing on the suppression issue. To be sure, defendant has disputed certain facts surrounding the search of his unapproved residence. But as the preceding discussion makes clear, the facts actually relevant to disposing of defendant's challenge to the warrantless search are not in dispute. See, e.g., United States v. Billups, 181 Fed.Appx. 79, 82 (2d Cir. 2006) (summary order) ("An evidentiary hearing is only required where 'contested issues of fact going to the validity of the search are in question.'" (citation omitted)). Accordingly, defendant's motion to suppress will be denied.

### 2. Motion to Dismiss

Pascual also argues that Count Four of the indictment must be dismissed because his prior felony convictions do not satisfy the relevant definition of a "crime of violence." Count Four of the indictment charges Pascual with possession of body armor as a person convicted of a violent felony.[6]

"[A] defendant can raise a defect in the indictment for 'failure to state an offense' prior to trial 'if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits.'" United States v. Walsh, 156 F.Supp.3d 374, 379, 2016 WL 211916, at *3 (E.D.N.Y.2016) (quoting FED. R. CRIM. P. 12(b)(3)(B)(v)).

---

6. To determine whether a defendant convicted under a divisible statute was convicted of a predicate violent felony, a court must apply the modified categorical approach. See Mathis v. United States, —— U.S. ——, 136 S.Ct. 2243, 2249, 195 L.Ed.2d 604 (2016).

**■** "A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged." United States v. Smith, 985 F.Supp.2d 547, 561 (S.D.N.Y.2014). However, "[a] charge in an indictment is insufficient and must be dismissed when it does not describe conduct that is a violation of the criminal statute charged." Id. (citations omitted).

As relevant here, a felon who has previously committed a "crime of violence" is prohibited from purchasing, owning, or possessing body armor. 18 U.S.C. § 931(a)(1). A "crime of violence" is defined elsewhere in Title 18 as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 16(a).[7]

As the Supreme Court has since explained, the use of the phrase "physical force" in this sort of statutory definition means "*violent* force—that is, force capable of causing physical pain or injury to another." Johnson v. United States, 559 U.S. 133, 140, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010); see also Leocal v. Ashcroft, 543 U.S. 1, 11, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (noting § 16's language "suggests a category of violent, active crimes"); Jones, 830 F.3d 142, 2016 WL 3923838, at *3 (applying Johnson's "analysis of 'violent felony' to the Career Offender Guideline's use of 'crime of violence' ").[8]

Pascual argues that his prior state felony convictions for Attempted Robbery in the Second Degree in violation of New York Penal Law § 160.10(1) do not satisfy this federal definition because the "forcibly stealing" element of these crimes, which is common to all degrees of robbery offenses in New York, "includes *de minimis* levels of force which do not fall within the federal definition of a 'crime of violence' in section 16(a)." United States v. Moncrieffe, 167 F.Supp.3d 383, 404, 2016 WL 913391, at *17 (E.D.N.Y. Mar. 10, 2016); see also Jones, 830 F.3d 142, 2016 WL 3923838, at *5 ("In New York, all degrees of robbery involve 'forcible stealing' and are distinguished by the presence of other aggravating factors.").

**■** Pascual is correct. According to New York law, the "forcible stealing" requirement of the robbery statute is satisfied when a person "uses or threatens the immediate use of physical force upon another person." N.Y. Penal Law § 160.00. However, "New York courts have explained that the 'physical force' threatened or employed can be minimal, including a bump, a brief tug-of-war over property, or even the minimal threatened force exerted in 'blocking' someone from pursuit by simply standing in their way." Moncrieffe, 167 F.Supp.3d at 403, 2016 WL 913391, at *16 (collecting cases).

Importantly, the aggravating factor relevant in this case involves a forcible stealing where the defendant is "aided by another person actually present." § 160.10(1). According to the New York Court of Appeals, the minimum showing for a conviction under this subsection requires only that the other person actually present "was ready, willing, or able to aid defendant in the

---

7. The definitions found in 18 U.S.C. § 16 apply to a number of different provisions found in Title 18. See United States v. Gonzalez–Longoria, 831 F.3d 670, 675 n. 4, 2016 WL 4169127, at *3 n. 4 (5th Cir. Aug. 5, 2016) (en banc) (collecting examples).

8. Generally speaking, "when Congress uses the same language in two statutes having similar purposes ... it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." Smith v. City of Jackson, Miss., 544 U.S. 228, 233, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005).

forcible stealing." People v. Hedgeman, 70 N.Y.2d 533, 541, 523 N.Y.S.2d 46, 517 N.E.2d 858 (N.Y.1987).

"Simply put, a less-than-violent forcible stealing can be perpetrated by a defendant who is joined by another person actually present." Laster v. United States, 2016 WL 4094910, at *3 (S.D.N.Y. Aug. 2, 2016) (applying the modified categorical approach to hold that a defendant's New York conviction for attempted second-degree robbery "is no longer a violent felony in light of Jones" and granting collateral relief on this issue); Moncrieffe, 167 F.Supp.3d at 406, 2016 WL 913391, at *19 ("The 'physical force' required under the New York robbery statute can be minimal and does not need to amount to the necessary 'violent force' under federal section 16(a)."). Accordingly, Count Four will be dismissed. See Smith, 985 F.Supp.2d at 561.

## IV. CONCLUSION

Because the initial warrantless search of Pascual's unapproved residence in connection with his arrest on a valid parole warrant was rationally related to his parole officer's duty to investigate the nature and extent of defendant's parole violations, the motion to suppress will be denied. However, because neither of the state felony convictions identified by the parties currently satisfy the federal definition of a "crime of violence," Count Four of the indictment will be dismissed.[9]

Therefore, it is

ORDERED that

1. Defendant Nelson Pascual's motion is GRANTED in part and DENIED in part;

2. Defendant Nelson Pascual's motion to suppress is DENIED;

9. As the Second Circuit noted in Jones, "[t]he New York Court of Appeals has not ruled on whether the force supporting a robbery conviction can be less than violent. Decisions of

3. Defendant Nelson Pascual's motion to dismiss Count Four of the indictment is GRANTED; and

4. Count Four is DISMISSED.

IT IS SO ORDERED.

the lower courts, however, have made clear that 'forcible stealing' alone does not necessarily involve the use of 'violent force.' " 830 F.3d 142, 2016 WL 3923838, at *5.