United States v. Castillo

In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2021
No. 21-527

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

CHAYANNE CASTILLO, AKA BAMBI,
*Defendant-Appellant.*

On Appeal from a Judgment of the United States District Court for
the Southern District of New York.

ARGUED: MARCH 9, 2022
DECIDED: JUNE 8, 2022

Before: SACK, LOHIER, and NARDINI, *Circuit Judges*.

Defendant-Appellant Chayanne Castillo was sentenced to a 40-month term of imprisonment for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). In calculating Castillo's advisory sentencing range under the United States Sentencing

Guidelines, the United States District Court for the Southern District of New York (Cathy Seibel, *Judge*) concluded that Castillo's prior conviction for attempted second-degree gang assault in violation of New York Penal Law §§ 120.06 and 110.00 was a qualifying "crime of violence" for which his base offense level would be raised from 14 to 20. On appeal, Castillo argues that his conviction is not a crime of violence under the categorical approach because New York courts have deemed attempted second-degree gang assault a legal impossibility. We agree, and therefore VACATE Castillo's sentence and REMAND for resentencing.

SHIVA H. LOGARAJAH (Karl Metzner, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

DANIEL HABIB, Federal Defenders of New York, Inc., New York, NY, *for Defendant-Appellant*.

WILLIAM J. NARDINI, *Circuit Judge*:

In this appeal, we must answer a now-familiar question: Does a criminal defendant's prior conviction qualify as a "crime of violence" and thus subject him to a higher sentence for a subsequent federal conviction? In Defendant-Appellant Chayanne Castillo's

case, however, the answer depends on two peculiarities of New York law. First, New York allows criminal defendants to plead guilty to legally impossible offenses. Castillo did just that. Second, the legally impossible offense to which Castillo pled guilty—namely, attempted second-degree gang assault in violation of New York Penal Law §§ 120.06 and 110.00—involves the incoherent premise that the defendant intended to cause an unintended result. The United States District Court for the Southern District of New York (Cathy Seibel, *Judge*) determined that attempted second-degree gang assault was a crime of violence sufficient to raise Castillo's base offense level under the United States Sentencing Guidelines. We conclude, however, that Castillo's conviction for this particular offense did not include an element constituting the use, attempted use, or threatened use of physical force, and so it should not have been used to enhance his Guidelines range. We therefore VACATE Castillo's sentence and REMAND for resentencing.

## I.       Background

On June 26, 2020, Castillo was charged in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Castillo pleaded guilty to this charge without a plea agreement on November 19, 2020.

In its Presentence Report, the United States Probation Office ("Probation") applied U.S.S.G. § 2K2.1(a)(4)(A). That section provides for a base offense level of 20 for the unlawful possession of a firearm if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." The application notes to § 2K2.1 dictate that the phrase "'[c]rime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." U.S.S.G. § 2K2.1, comment. (n.1). In turn, § 4B1.2, also known as the Career Offender Guideline, defines "crime of violence" to mean "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) is one of a series of enumerated crimes including "aggravated assault." U.S.S.G. § 4B1.2(a)(1)–(2). Subsections (1) and (2) are known as the "force clause" and the "enumerated offenses clause," respectively. Application Note 1 of the Commentary to § 4B1.2 further states that the term "crime of violence . . . include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2, comment. (n.1).

Probation determined that Castillo had a felony conviction for a crime of violence: a 2011 conviction for attempted second-degree gang assault in violation of New York Penal Law §§ 120.06 and 110.00. "A person is guilty of gang assault in the second degree when, with intent to cause physical injury to another person and when aided by two or more other persons actually present, he causes serious physical injury to such person or to a third person." N.Y. Penal Law § 120.06.

5

New York law defines "[p]hysical injury" as "impairment of physical condition or substantial pain," *id.* § 10.00(9) (internal quotation marks omitted), and "[s]erious physical injury" as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ," *id.* § 10.00(10) (internal quotation marks omitted). New York law provides that a person "is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." *Id.* § 110.00.

Without the enhancement for a prior crime of violence, Castillo's base offense level would have been 14. *See* U.S.S.G. § 2K2.1(a)(6)(A). Instead, after subtracting three levels for acceptance of responsibility, Probation arrived at a total offense level of 17. In combination with his criminal history category of V, this base offense

level yielded an advisory Guidelines range of 46 to 57 months of imprisonment.

Castillo objected to the use of his prior conviction to increase his base offense level, arguing that attempted second-degree gang assault is not a crime of violence for three reasons: (1) second-degree gang assault requires only intent to cause physical injury, not serious physical injury, and so the offense does not meet the minimum level of violent force required; (2) second-degree gang assault could be committed by omission and thus does not categorically require the "use" of force; and (3) second-degree gang assault is not generic "aggravated assault" as enumerated in § 4B1.2(a)(2).

Castillo was sentenced on March 3, 2021. The district court overruled Castillo's objection to the use of his prior conviction to enhance his base offense level. It rejected Castillo's first argument, finding that "a knowing and intentional causing of physical injury . . . necessarily involves physical force," and that "[t]he requirement that

7

two or more people be[] in the immediate vicinity aiding the actor made it obvious that the statute requires use of violent force." App'x at 64, 66. Relying on our *en banc* decision in *United States v. Scott*, 990 F.3d 94 (2d Cir. 2021), in which we held that even an offense that can be committed by omission can involve the use of force, *id.* at 125, the district court also rejected Castillo's second argument. Because the district court found that attempted second-degree gang assault was a crime of violence under U.S.S.G. § 4B1.2(a)'s force clause, it did not reach his third argument, that his prior conviction was not generic "aggravated assault" under § 4B1.2(a)'s enumerated offenses clause.

Ultimately, the district court agreed with Probation's calculation of Castillo's base offense level at 20, resulting in a total offense level of 17 after adjustment for Castillo's acceptance of responsibility. After accounting for Castillo's criminal history category of V, the district court arrived at an advisory Guidelines range of 46 to 57 months. After considering the factors outlined in 18

U.S.C. § 3553(a), the district court decided to "go a little bit below the guidelines, but . . . not . . . a lot below the guidelines." App'x at 81–82. The district court sentenced Castillo to a 40-month term of imprisonment. This appeal followed.

## II. Discussion

"We review a sentence on appeal for procedural and substantive reasonableness." *United States v. Seabrook*, 968 F.3d 224, 232 (2d Cir. 2020). "A district court commits procedural error when . . . it makes a mistake in its Guidelines calculation." *Id*. Whether an offense is a "crime of violence" under the Career Offender Guideline is a question of law that we decide *de novo*. *Scott*, 990 F.3d at 104.

On appeal, Castillo argues that the district court erred by classifying attempted second-degree gang assault as a crime of violence under U.S.S.G. §§ 2K2.1(a)(4)(A) and 4B1.2(a)(1) and, as a result, using a base offense level of 20 to calculate his advisory Guidelines range. He contends in part that his crime of conviction—attempted second-degree assault—is not a "crime of violence" within

9

the meaning of § 4B1.2(a)'s force clause because it is legally impossible under New York law, does not entail a coherent *mens rea*, and therefore cannot be said to categorically constitute a crime of violence.[1]

## A. Legally impossible crimes under New York law

Much of Castillo's argument depends upon the implications of his crime of conviction—attempted second-degree gang assault— being legally impossible. New York law allows a defendant to plead guilty to a "nonexistent or legally impossible offense in satisfaction of an indictment that charges a higher offense" to facilitate the plea-bargaining process and further the policy interests that this process serves. *People v. Tiger*, 32 N.Y.3d 91, 101 (2018). In approving this

---

[1] The Government contends that Castillo failed to preserve this argument. Because Castillo argued in the district court that the intent element of second-degree gang assault does not sufficiently align with the definition of "crime of violence" found in U.S.S.G. § 4B1.2 and because the legal impossibility argument likewise focuses on the inadequacy of the intent element of his crime of conviction, we deem his argument sufficiently preserved for appellate review. *See Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 (2d Cir. 2006) (explaining that this Court "may entertain additional support that a party provides for a proposition presented below").

unusual practice, the New York Court of Appeals has emphasized that a defendant who knowingly accepts a plea to a legally impossible offense "in satisfaction of an indictment charging a crime carrying a heavier penalty" has "declined to risk his chances with a jury" and received the "substantial benefit" of a decreased sentencing range. *People v. Foster*, 19 N.Y.2d 150, 153 (1967). Put differently, a plea to a legally impossible offense "should be sustained on the ground that it was sought by [the] defendant and freely taken as part of a bargain which was struck for the defendant's benefit." *Id.* at 154.

Under New York law, an attempt "consists of an intent to bring about the result which the particular law proscribes and, in addition, an act in furtherance of that intent." *People v. Campbell*, 72 N.Y.2d 602, 605 (1988); *see also* N.Y. Penal Law § 110.00 ("A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime."). "[W]here a penal statute imposes strict liability for creating

11

an unintended *result*, an attempt to commit that crime is not a legally cognizable offense" because "[o]ne cannot attempt to create an unintended result." *People v. Prescott*, 95 N.Y.2d 655, 659 (2001). Although the New York Court of Appeals has not had occasion to apply this general rule to the specific conviction at issue in this case, the Appellate Division has twice done so. The First Department has held that attempted second-degree gang assault is a "legal impossibility" because it criminalizes the attempt to cause an unintended result. *People v. Delacruz*, 110 N.Y.S.3d 682, 683 (1st Dep't 2019) (internal quotation marks omitted); *In re Cisely G.*, 918 N.Y.S.2d 23, 24 (1st Dep't 2011).

## B. Applying the categorical approach to Castillo's conviction

### 1. The force clause

The district court determined that Castillo's prior conviction was a crime of violence under § 4B1.2(a)'s force clause. To evaluate whether a crime "has as an element the use, attempted use, or

12

threatened use of physical force against the person of another,"

U.S.S.G. § 4B1.2(a)(1), courts use the categorical approach, *see United States v. Moore*, 916 F.3d 231, 240 (2d Cir. 2019); *see also Taylor v. United States*, 495 U.S. 575, 600 (1990). A court must identify the elements of the offense, "determine the minimum criminal conduct necessary to satisfy th[ose] elements . . . without regard to whether the defendant himself engaged in more egregious conduct," and then "decide whether a necessary component of that minimum conduct is the defendant's use of physical force." *Scott*, 990 F.3d at 104–05. Where a state law crime is at issue, "[w]e look to state law in identifying the elements of [the] crime, but to federal law in determining whether the consequences of the conduct that those elements require render conviction for that conduct a violent crime under federal law." *Id.* at 104 (cleaned up). Because the Career Offender Guideline's force clause, set forth at § 4B1.2(a)(1), is identical to the force clause found in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B) ("ACCA"),

we may draw upon case law interpreting ACCA's force clause to help us interpret U.S.S.G. § 4B1.2(a)(1).  *Scott*, 990 F.3d at 104.

Castillo argues that the district court erred by classifying his prior conviction as a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(a)'s force clause.  He asserts that, because attempted second-degree assault is a legally impossible crime with incoherent elements, it cannot be evaluated under the categorical approach, which focuses solely on the elements of a crime and whether they include the use, attempted use, or threatened use of physical force.

We have repeatedly emphasized that the categorical approach requires an evaluation of the *elements* of a crime to determine if the defendant's use of physical force is among them.  *See Scott*, 990 F.3d at 104–05 (describing the categorical approach as an "inquiry to determine the minimum criminal conduct necessary to satisfy the elements of a crime" and whether that minimum conduct involves "the defendant's use of physical force"); *Gray v. United States*, 980 F.3d

14

264, 265–66 (2d Cir. 2020) ("Under the categorical approach, we compare the elements of the offense . . . to the statutory definition of 'crime of violence,' . . . without regard to the particular facts of the defendant's offense conduct."); *Hill*, 890 F.3d at 55 ("[C]ourts look only to the statutory definitions—*i.e.*, the elements—of the offense, and *not* to the particular underlying facts." (alterations and internal quotation marks omitted)).

What, then, are the elements of attempted second-degree gang assault under New York law?  As an initial matter, Castillo argues that the elements of a legally impossible crime are "nonexistent." Castillo Br. at 23.  In pressing this argument, Castillo relies on *People v. Martinez*, in which the defendant was indicted and tried for, but ultimately acquitted of, attempted murder in the second degree. *People v. Martinez*, 81 N.Y.2d 810, 811 (1993).  However, the trial court instructed the jury on attempted manslaughter in the first degree as a lesser included offense.  *See id.*  Like second-degree gang assault, first-

15

degree manslaughter is defined, in part, by the unintentional causation of bodily harm, specifically death. N.Y. Penal Law § 125.20(1). The jury returned a verdict convicting the defendant of attempted first degree manslaughter, but the New York Court of Appeals vacated the conviction because "[i]t is settled law that attempted manslaughter in the first degree . . . is a nonexistent crime." *Martinez*, 81 N.Y.2d at 811. The Court of Appeals held that "[s]ince the crime does not exist in the Penal Law, there could not be evidence to support such a conviction beyond a reasonable doubt" at trial. *Id.* at 812. However, we do not read *Martinez* to mean that a legally impossible crime can never have any discernable elements. In fact, the New York Court of Appeals's reasoning implies otherwise. The Court of Appeals reasoned that, "[f]or a conviction, a jury must find the defendant guilty of each element of the crime beyond a reasonable doubt, but could not do so here *because an element of attempted manslaughter in the first degree as charged is an unintended result* that as

16

a matter of law cannot be attempted." *Id.* (emphasis added). In other words, *Martinez* held that first-degree manslaughter was a legally impossible offense because *one particular element*—intending an unintended result—would be incoherent.

Instead, we think the proper mode of analysis is to parse the elements of Castillo's conviction and determine whether each is (1) coherent; and, if so, (2) constitutes the use, attempted use, or threatened use of physical force. As discussed earlier, "[a] person is guilty of gang assault in the second degree when, with intent to cause physical injury to another person and when aided by two or more other persons actually present, he causes serious physical injury to such person or to a third person." N.Y. Penal Law § 120.06. The three elements of completed second-degree gang assault are readily identified by the text of N.Y. Penal Law § 120.06. The first element identifies the *mens rea*—"intent to cause physical injury." *Id.* The second element establishes the "gang" aspect of gang assault—the

17

defendant must be "aided by two or more other persons actually present." *Id.* The third element identifies the *actus reus*—the causation of "serious physical injury." *Id.* Because Castillo was convicted not of completed second-degree gang assault, but of *attempted* second-degree gang assault, we must analyze these elements through the lens of New York's criminal attempt statute, which provides that "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." *Id.* § 110.00. That is, the *mens rea* of attempt is the "intent to commit [the object] crime," N.Y. Penal Law § 110.00, which requires that the defendant "specifically intend[] all elements of th[e object] offense," *Gill v. I.N.S.*, 420 F.3d 82, 90 (2d Cir. 2005). The *actus reus* of attempt is the "engag[ing] in conduct which tends to effect the commission of [the object] crime," N.Y. Penal Law § 110.00, which requires that the defendant "engage[] in conduct that came 'dangerously near'

18

commission of the completed crime," *People v. Kassebaum*, 95 N.Y.2d 611, 618 (2001).

The requirements of the New York attempt statute can be intelligibly read in tandem with the *mens rea* element of second-degree gang assault—the specific intent to cause physical injury. *Cf. People v. McDavis*, 469 N.Y.S.2d 508, 510 (4th Dep't 1983) ("[T]here can be no attempt to commit a crime that does not involve a specific intent, such as . . . a crime predicated upon a reckless act."). In this way, Castillo's conviction is different from the conviction at issue in *Gill v. I.N.S.* In *Gill*, we concluded that a guilty plea to attempted reckless assault in violation of N.Y. Penal Law § 120.05(4) was not a crime involving moral turpitude capable of rendering the petitioner, a lawful permanent resident, removable under the immigration laws. *Gill*, 420 F.3d at 88, 91. In so holding, we relied, in part, on the incompatibility between the specific intent required to commit an attempt under New York law and the *mens rea* of the petitioner's

19

object offense, recklessness. *See id.* at 90–91. Noting that "[i]t is in the intent that moral turpitude inheres," *id.* at 89 (internal quotation marks omitted), and "[w]ithout in any way questioning the *state's* ability to hold a defendant to his plea to an attempted reckless crime," we held that "*no* mental state can be clearly discerned from such a conviction, let alone the sort of aggravated recklessness that has been found to demonstrate moral turpitude," *id.* at 91. Unlike the reckless assault at issue in *Gill*, however, Castillo's crime of conviction requires a *mens rea* of specific intent to cause physical injury. No incompatibility arises between the specific intent required to commit an attempt and the *mens rea* required to commit second-degree gang assault. Thus, Castillo's guilty plea to attempted second-degree gang assault coherently reflects Castillo's specific intent to cause physical injury.

That conclusion, however, does not end our larger inquiry. Even assuming that the causation of "physical injury" as defined by

20

New York law would involve the quantum of "violent force" sufficient to constitute the use of "physical force" under the categorical approach,[2] *see Scott*, 990 F.3d at 105, the mere intent to use physical force, without more, does not constitute "the *use*, attempted *use*, or threatened *use* of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1) (emphases added).

Turning to the second element of second-degree gang assault— that the defendant be aided by two or more people actually present— we likewise see no incompatibility between that element and the requirements of New York's attempt statute. The New York Court of Appeals has explained that this element requires that the others must "simply be present and render aid to the defendant," but need not "share [the] defendant's intent to cause physical injury." *People v.*

---

[2] We need not determine whether the causation of "physical injury" as defined by New York law involves enough force to constitute the use of "'physical force' . . . [which] means '*violent* force,' *i.e.*, 'force capable of causing physical pain or injury to another person,'" *Scott*, 990 F.3d at 105 (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)), in order to resolve Castillo's appeal. Accordingly, we express no opinion on the matter.

*Sanchez*, 13 N.Y.3d 554, 565 (2009). A defendant could conceivably intend that two or more people be present and aid him during an assault, and so no conceptual incoherence arises when considering this element of second-degree gang assault through the lens of the attempt statute.

But an intent to have the presence and aid of others does not categorically involve the use, attempted use, or threatened use of physical force. In arguing otherwise, the government analogizes to our decision in *United States v. Pereira-Gomez*, 903 F.3d 155 (2d Cir. 2018), in which we held that attempted second-degree robbery in violation of N.Y. Penal Law §§ 110.00 and 160.10 was a crime of violence under the force clause under Application Note 1(B)(iii) to the version of U.S.S.G. § 2L1.2 found in the 2014 version of the Guidelines. *Id.* at 165–66. We did so because "New York defines robbery as 'forcible stealing,' which requires 'us[ing] or threaten[ing] the immediate use of physical force upon another person.'" *Id.* at 165

22

(quoting N.Y. Penal Law § 160.00). Because the "level of physical force must be enough 'to prevent resistance to the taking or to compel the owner to deliver up the property,'" we concluded that "[b]y its plain language, . . . New York's robbery statute includes as an element the use of violent force." *Id.* (quoting *People v. Jurgins*, 26 N.Y.3d 607, 614 (2015)). The defendant in *Pereira-Gomez* argued that several decisions of the New York Appellate Division established that robbery does not necessarily involve the use of violent force and pointed to a decision "in which defendants were convicted of robbery by forming a human wall that blocked the victim's path, and another in which the defendant physically blocked the victim's passage." *Id.* at 165–66 (internal quotation marks omitted). In rejecting the defendant's argument that these particular factual scenarios did not involve the use, attempted use, or threatened use of physical force, we held that "[t]he 'human wall' was no mere obstacle to the victim's pursuit of the robber; it constituted a threat that pursuit would lead

to violent confrontation" and "[s]o too did blocking the victim's passage in the latter case" because "[o]nly by backing down in the face of these threats did the victims avoid physical force." *Id.* at 166.

However, in so holding, we did not establish a rule that the intended presence of co-perpetrators categorically amounts to a threatened use of force. Several decisions by New York courts interpreting the gang assault statutes[3] and the second-degree robbery statute, which contains a similarly worded element, *see Sanchez*, 13 N.Y.3d at 564–65 ("The interpretation of the robbery statute is equally applicable to the similarly worded gang assault statutes."), demonstrate that this element does not categorically involve the use, attempted use, or threatened use of physical force. For example, a defendant was "aided by another person actually present" where his

---

[3] In addition to the offense of second-degree gang assault, New York law criminalizes first-degree gang assault, which is committed "when, with the intent to cause serious physical injury to another person and when aided by two or more other persons actually present, [a defendant] causes serious physical injury to such person or to a third person." N.Y. Penal Law § 120.07.

codefendant pointed out the complainant as a suitable victim and then, in response to a hand signal from the defendant, the "codefendant and an unapprehended accomplice took up a position approximately 10 feet away, ready to render immediate assistance to [the] defendant if needed." *People v. Stokes*, 716 N.Y.S.2d 666, 667 (1st Dep't 2000). Likewise, a defendant was aided by two or more persons actually present in the commission of an assault where "the driver and the passengers in the backseat of the vehicle that the defendant was riding in when he shot the complainant" were "in a position to render immediate assistance to the defendant should it prove necessary." *People v. Marquez*, 751 N.Y.S.2d 251, 253 (2d Dep't 2002). As these examples demonstrate, the intended presence and aid of two or more persons actually present does not categorically involve the use, attempted use, or threatened use of physical force.[4]

---

[4] We recognize that New York courts have occasionally characterized this requirement as "pos[ing] a sufficient *threat* of additional violence so as to satisfy the aggravating element necessary to sustain" a conviction for gang assault.

25

We have concluded that the *mens rea* element of second-degree gang assault is compatible with New York's requirements for attempt, and that the intended presence of multiple people who are actually present is also legally coherent, but neither element itself constitutes the use, attempted use, or threatened use of physical force. So far, so good. But the legal coherence of Castillo's sentencing enhancement breaks down when we apply the requirements of the attempt statute to the *actus reus* of second-degree gang assault—the causation of serious physical injury. "Since second-degree gang assault involves the intended result of physical injury and the *unintended* result of serious physical injury, it . . . cannot be attempted because 'there can be no attempt to commit a crime where one of the

---

*Marquez*, 751 N.Y.S.2d at 253 (emphasis added). But the Court of Appeals of New York has also characterized the requirement as "pos[ing] a sufficient *risk* of additional violence." *Sanchez*, 13 N.Y.3d at 564 (emphasis added). As some district courts in this Circuit have noted, "[w]hile the mere presence of another person actually present may increase the *risk* of injury," it does not categorically satisfy the force clause. *Laster v. United States*, No. 06 CR. 1064, 2016 WL 4094910, at *3 (S.D.N.Y. Aug. 2, 2016) (emphasis added); *see also United States v. Pascual*, 199 F. Supp. 3d 670, 678 (N.D.N.Y. 2016).

26

elements is a specific intent but another, an unintended result.'" *In re Cisely G.*, 918 N.Y.S.2d at 24 (emphasis added) (quoting *McDavis*, 469 N.Y.S.2d at 510); *cf. United States v. Moreno*, 821 F.3d 223, 230 (2d Cir. 2016) ("Because it is legally impossible to intend to commit a crime that is defined . . . by an unintended result, one cannot attempt to commit reckless second degree assault . . . ."). In this way, Castillo's conviction is like the petitioner's conviction in *Gill*, 420 F.3d at 91. In *Gill*, we noted that "[a] defendant can only be guilty of attempted assault if he specifically intended all elements of that offense, but § 120.05(4) is worded such that a defendant can be convicted simply because his assault *resulted* in serious injury, regardless of whether he intended such a result." *Id.* at 90. We held that the offense at issue could not be a crime involving moral turpitude partly because of the legal impossibility of attempting an unintended result. *Id.* at 91. Put another way, it is legally incoherent to say that a defendant intends to cause an unintended result. And because this third element of New

27

York attempted second-degree gang assault breaks down into incoherence, we cannot say that this element necessarily involves the "use, attempted use, or threatened use of force against the person of another." U.S.S.G. § 4B1.2(a)(1).

In sum, although we can successfully discern some information from Castillo's conviction for attempted second-degree gang assault, what we can discern does not satisfy the force clause. We therefore cannot say, with the level of certainty required by the categorical approach, that Castillo's conviction for attempted second-degree gang assault definitively reflects that he used, attempted to use, or threatened to use physical force, and it was error for the district court to conclude otherwise.[5]

---

[5] Nor was the error harmless. Here, the use of Castillo's prior conviction to apply a crime of violence enhancement increased the applicable Guidelines range from 27–33 months to 46–57 months. Without the crime-of-violence enhancement, Castillo's base offense level would have been 14. U.S.S.G. § 2K2.1(a)(6)(A). After a two-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), Castillo's total offense level would have been 12. After taking into account his Criminal History Category of V, the resulting sentencing range would have been 27–33 months. Moreover, the district court explicitly tied its

## 2.	The Government's alternative arguments

The Government offers two alternative arguments upon which we might rely to affirm the district court's decision.  We conclude that neither is persuasive.

### a.	Application Note 1 to U.S.S.G. § 4B1.2

The Government first argues that Castillo's prior conviction qualifies as a crime of violence under Application Note 1 to U.S.S.G. § 4B1.2.  Application Note 1 provides that the phrase "'[c]rime of violence' . . . include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."  U.S.S.G. § 4B1.2, comment. (n.1).  The Government argues that "because Gang Assault in the Second Degree is a crime of violence, Application Note 1 . . . makes Attempted Gang Assault in the Second Degree a crime of violence as well."  Gov't Br. 22.  Even assuming that completed second-degree gang assault is a crime of violence, a conclusion we need not and do

---

ultimate sentencing decision to the applicable Guidelines range, stating its intention to "go a little bit below the guidelines, but . . . not . . . a lot below the guidelines."  App'x at 81–82.

not reach today, Castillo's conviction does not fall within the ambit of Application Note 1.

We have held that "attempt," as the word is used in the body of U.S.S.G. § 4B1.2(a)(1), is "generic attempt." *United States v. Tabb*, 949 F.3d 81, 86 (2d Cir. 2020). "Under 'the normal rule of statutory interpretation . . . identical words used in different parts of the same statute are generally presumed to have the same meaning.'" *T.W. v. N.Y. State Bd. of L. Exam'rs*, 996 F.3d 87, 99 (2d Cir. 2021) (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005)). Attempt, as the word is used in Application Note 1 to U.S.S.G. § 4B1.2, then, also takes its generic definition. *See United States v. Faulkner*, 950 F.3d 670, 675 (10th Cir. 2019); *United States v. Benítez-Beltrán*, 892 F.3d 462, 467–68 (1st Cir. 2018); *United States v. Dozier*, 848 F.3d 180, 186 (4th Cir. 2017). This is consistent with the "general rule . . . that unless Congress gives plain indication to the contrary, federal laws are not to be construed so that their meaning hinges on state law." *Ming Lam Sui v. I.N.S.*, 250 F.3d

105, 114 (2d Cir. 2001); *see also Taylor*, 495 U.S. at 590–91, 598 (holding that the term "burglary" as used in the Armed Career Criminal Act was to be given its "generic, contemporary meaning" to avoid a scenario in which "a person . . . would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct 'burglary'"). We have adopted a generic definition of attempt that conforms to the views set forth in the Model Penal Code as the federal law of attempt within the Second Circuit. *See United States v. Manley*, 632 F.2d 978, 987 (2d Cir. 1980) ("This Court . . . has adopted the view set forth in . . . the American Law Institute's Model Penal Code . . . that the requisite elements of attempt are an intent to engage in criminal conduct and the performance of acts which constitute a 'substantial step' towards the commission of the substantive offense."); *see also Tabb*, 949 F.3d at 86 ("[G]eneric attempt is 'the presence of criminal intent and the completion of a substantial

31

step toward committing the crime.'" (quoting *Sui*, 250 F.3d at 115)).

This generic definition of attempt requires proof that the defendant

"had the intent to commit the crime." *United States v. Crowley*, 318

F.3d 401, 407 (2d Cir. 2003); *see also* 2 Wayne R. LaFave, *Substantive*

*Criminal Law* § 11.3(a) (3d ed. 2021) ("The mental state required for the

crime of attempt, as it is customarily stated in the cases, is an intent to

commit some other crime."). And under this generic definition, "[t]he

crime of attempt requires that the defendant have intended to commit

each of the essential elements of the substantive crime." *Collier v.*

*United States*, 989 F.3d 212, 221 (2d Cir. 2021); *see also* LaFave,

*Substantive Criminal Law* § 11.3(a) (noting that "because intent is

needed for the crime of attempt," crimes that "are defined in terms of

acts causing a particular result" cannot be attempted unless the

defendant specifically intended to bring about that result). Castillo's

conviction for attempted second-degree gang assault reflects the

nonsensical *mens rea* of intent to cause unintended serious physical

32

injury. His conviction therefore cannot reflect that he specifically intended each element of the object offense, and it therefore does not satisfy the definition of generic attempt. Castillo's conviction is thus not covered by Application Note 1.

### b. The enumerated offenses clause

The Government also argues that, even if attempted second-degree gang assault is not a crime of violence under U.S.S.G. § 4B1.2(a)(1), the force clause, it nonetheless qualifies as a crime of violence under § 4B1.2(a)(2), the enumerated offenses clause. We also use the categorical approach to determine whether a prior conviction is a crime of violence under the enumerated offenses clause. *See United States v. Evans*, 924 F.3d 21, 25 (2d Cir. 2019). "To do so, we 'compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' [enumerated] crime—*i.e.*, the offense as commonly understood.'" *Id.* (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)). The "generic" meaning of the enumerated offense is to be "ascertain[ed]

'in many instances' by reference to 'the sense in which the term is now used in the criminal codes of most States,' but also by 'consulting other sources, including federal criminal statutes, the Model Penal Code, scholarly treatises, and legal dictionaries.'" *Scott*, 990 F.3d at 123 (alterations omitted) (quoting *United States v. Castillo*, 896 F.3d 141, 150 (2d Cir. 2018)). "If the offense matches or is narrower than the generic version, a conviction under the statute categorically qualifies as a predicate crime of violence offense." *Moore*, 916 F.3d at 237–38. However, if "the statute criminalizes *any* conduct that would not fall within the scope of the generic offense, the offense cannot be considered a crime of violence." *Id.* at 238. As relevant here, the list of enumerated offenses in U.S.S.G. § 4B1.2(a)(2) includes "aggravated assault."

The Government argues that the generic definition of aggravated assault is the definition provided by Model Penal Code § 211.1. Under the Model Penal Code, a person is guilty of aggravated

34

assault if he "(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon." Model Penal Code § 211.1(2)(a)–(b).

The Government first argues that the statute under which Castillo was convicted, "Section 120.06[,] requires that the defendant 'cause[] serious physical injury.'" Gov't Br. at 27. True, the completed offense of second-degree gang assault requires the causation of "serious physical injury," but, unlike the Model Penal Code, the New York statute allows for a conviction even where the defendant intended to cause only physical injury and thus the causation of serious physical injury was unintentional. *In re Cisely G.*, 918 N.Y.S.2d at 24 ("[S]econd-degree gang assault involves the intended result of physical injury and the unintended result of serious physical

35

injury . . . ."). And Castillo's conviction was not for completed second-degree gang assault, but for attempted second-degree gang assault and therefore did not involve the actual causation of serious physical injury. In any event, Castillo's conviction does not align with the Model Penal Code's definition of "attempt[ing] to cause serious bodily injury to another," Model Penal § 211.1(2)(a), because the Model Penal Code defines attempt as "do[ing] or omit[ting] to do anything with the purpose of causing or with the belief that it will cause such result without further conduct on his part," *id.* § 5.01(1)(b). Finally, neither attempted nor completed second-degree gang assault has as an element the causation of bodily injury "with a deadly weapon," and so Castillo's conviction does not satisfy Model Penal Code § 211.1(2)(b).[6] We therefore conclude that Castillo's conviction

---

[6] The government's citation of *Sanchez* for the proposition that "New York Courts consider [gang] assaults to be 'tantamount' to assaults with a deadly weapon," Gov't Br. 27 (quoting *Sanchez*, 13 N.Y.3d at 565) (internal citation omitted), does not convince us otherwise. The *Sanchez* court's quotation from the legislative history of the gang assault statute does not satisfy the strictures of the categorical approach.

for attempted gang assault is not categorically "aggravated assault" within the meaning of U.S.S.G. § 4B1.2(a)'s enumerated offenses clause.

## III. Conclusion

Our decision today—that an attempted assault conviction is not a "crime of violence"—may seem anomalous. But if an anomaly exists, it is one that results at least in part from the rigidity of the categorical approach. As multiple members of this Court have pointed out in various contexts, the categorical approach sometimes generates strange results. *See Chery v. Garland*, 16 F.4th 980, 990–92 (2d Cir. 2021); *Scott*, 990 F.3d at 125–26 (Park, *J.*, concurring). However, unless and until Congress or the Supreme Court takes action to identify an alternative approach to define the contours of which prior convictions may be used to enhance a defendant's sentence, we are bound to apply it. Our decision today is therefore "likely but the latest in an unending procession of . . . cases applying the categorical approach." *Chery*, 16 F.4th at 991.

We also emphasize that our holding today is a narrow one—that attempted second-degree gang assault in violation of N.Y. Penal Law §§ 120.06 and 110.00 is not a crime of violence under U.S.S.G. § 4B1.2. We need not and do not today hold that a legally impossible crime can never satisfy the requirements of § 4B1.2. Nor do we express any view on what the proper outcome would be where a legally impossible crime has an element that can be coherently read to establish a defendant's use, attempted use, or threatened use of physical force. We are bound to conclude that Castillo's New York state conviction is not a crime of violence because the elements of attempt are irreconcilable with the elements of second-degree gang assault under state law. We of course express no view on whether any other jurisdictions (state or federal) would take the same approach.

In sum, we hold as follows:

(1) Castillo's conviction for attempted second-degree gang assault is not a crime of violence within the meaning of U.S.S.G. § 4B1.2(a)'s force clause, § 4B1.2(a)(1). We can discern no coherent element that constitutes the use, attempted use, or threatened use of physical force. It was error for the district court to conclude otherwise.

(2) Castillo's intent to have the presence and aid of others actually present does not categorically involve the use, attempted use, or threatened use of physical force.

(3) Castillo's conviction does not fall within the definition of "attempt[]" as that term is used in Application Note 1 to U.S.S.G. § 4B1.2 because it does not reflect that he specifically intended each element of the object crime of second-degree gang assault.

(4) Attempted second-degree gang assault is not enumerated "aggravated assault" as that phrase is used in U.S.S.G. § 4B1.2(a)'s enumerated offenses clause, § 4B1.2(a)(2).

We therefore VACATE Castillo's sentence and REMAND for resentencing.